Kelly. Good morning, your honors. My name is Leo Sal, and I represent the United States as a panelist in this matter, and I'd like to request two minutes for rebuttal, your honor. You may please the court. The district court erred in this case when it held that the defendant's post-trial diligence in bringing the newly discovered evidence to the attention of the district court could satisfy the diligence problem under Ionelli. That decision was wrong because as this court has repeatedly held, a defendant's post-trial diligence is legally irrelevant. The question the court should have focused on is whether the defendant had exercised sufficient, reasonable diligence before trial. Is it legally irrelevant, or is it just that you have to consider pre-trial as well, and then maybe even to a greater extent, but is it totally irrelevant? Well, your honor, I could see a situation where a defendant, even after trial, sat on that evidence too long, where it would foreclose a newly discovered evidence. Only in that situation, no, your honor. But simply focusing on post-trial diligence alone, in that context, it's legally irrelevant, your honor. Again, the question the court should have been asking is whether the defendant had exercised sufficient, reasonable diligence before trial, because the whole purpose of the diligence requirement under Ionelli, your honors, is to avoid multiple trials, to respect the finality of judgments, to give the defendant his day in court, and to have a single trial. Okay, now what were the opportunities? Your argument is that he met with Jones. They were together after the incident, and that there were times that he could have found out or asked questions or done whatever? What should Kelly have done? Well, your honor, with respect, just to put this into context, what Kelly should have done is governed by who Jones is. Jones is not some stranger to the defendant. He wasn't some guy sitting in the back of the bar. Jones is the defendant's friend and longtime drinking partner, who was sitting right next to the defendant when this gun dropped. So given that backdrop, what the defendant should have done was to ask Jones, what did you see? Did you see or hear anything that night? And your honor's correct. This is not a case where the defendant didn't know who the witness was, or didn't know where to locate the witness, or had a witness who was unwilling to meet with him. According to Jones himself, they met two or three times between the time of the arrest and the time of the trial. That's over 14 months, your honor. According to Jackie Cephas, who was the defendant's longtime girlfriend, that number could have been up to 20 times, your honor. The point is, there was multiple opportunities for the defendant to sit down, to ask Jones, what did you see? They sat down face-to-face, your honor, even, remarkably, back at Cafe Breezes, which is the place where the defendant was initially arrested. Yet, it's inexplicably, the defendant never asked Jones, what did you see? And your honor, the facts of this case show why the court's rule leads to absurd results. By focusing on the defendant's post-trial diligence, the district court turned the diligence rule on its head, completely divorcing it from the purpose of the rule originally. Under the district court's rule, defendants had absolutely no incentive to conduct any pretrial investigation whatsoever. In fact, the exact opposite is true, your honor. I submit to you that, under the district court's rule, defendants have a perverse incentive to avoid conducting any pretrial investigation. Who has the burden of investigation? Excuse me? Who has the burden of the investigation pretrial? Counsel, or the defendant himself? Your honor, they both do. They both have the burden of investigation, and I add to your honor that the burden of demonstrating that investigation to the district court, as this court held in SADA, is a heavy one. It's not a light one. It is the defendant's burden, and it's the defendant's burden to demonstrate that either he or his counsel acted with sufficient reasonable diligence to discover this new evidence before trial. And that's important, your honor, because if a defendant fails to conduct a reasonable pretrial investigation, he does so in his own peril. If he discovers new evidence after the trial, and that evidence could have been discovered with the exercise of reasonable diligence prior to trial, then that new evidence cannot serve as the basis of a newly discovered evidence claim. But he doesn't, according to the record, he never knew what his friend would say from the record. Your honor, and I submit to you that that's a false argument, your honor. As the court after court has held, the duty to investigate extends far beyond simply questioning people that you think may have committed the crime. Saying that Jones, saying that the defendant didn't have any duty to question Jones because he didn't know that Jones would admit to throwing the gun is, it basically guts the diligence requirement. There's a whole world of potentially exculpatory information that Jones could have provided. At best, maybe he saw who actually threw the gun. At worst, maybe he saw something. Maybe he saw someone with a gun that night. Maybe he heard something. I refer this court to the opinion in PLISCO versus Union Railroad Company. They rejected this exact argument, your honor, what the party, it's a civil case, your honor, but the analysis is perfectly analogous. What the party there argued was, well, I didn't know that that witness would have critical information. Well, the court rejected that. The touchstone is not whether you know that the witness has critical information. The touchstone is whether that person is a witness and may have helpful information. Isn't the Lima case of help to you? Absolutely, your honor. Yes, the Lima case, which I recall is Judge Becker's well-reasoned opinion, I think is absolutely on point. In that case, you had the defendant come forward after the fact with new affidavits from, I think, the neighbors who were going to support his alibi defense. Neighbors who clearly they didn't know that the neighbors had seen something, but it would be reasonable to ask. That's right. As Judge Becker held in affirming the district court, those affidavits could have and should have been received into evidence before trial, again, promoting the respect for the finality of judgment. That defendant had his day in court. He is required to conduct a reasonable diligence. What is your view? The district court, in part, relied on the Morales decision from the Eastern District of Pennsylvania. Do you think that case was wrongly decided? Well, your honor, two responses. Number one, Morales is distinguishable in this case because, well, I think Morales was wrongly decided in light of Lima because what the court held in Morales was, well, the defendant in that case didn't have any reason to know that the witness saw the defendant walking out of the house and supporting his defense. I think that's inconsistent with Lima and is wrongly decided, but that's worlds away from this case, your honor. In Morales, you have some neighbor in the distance who the defendant didn't know saw anything. In this case, you got a guy sitting right next to the defendant, his longtime friend and drinking partner. They had been talking and drinking all night. Diligence, if it means anything, your honor, it has to mean simply taking the minimal step of asking the witness, what did you see? Did the district court here make a credibility finding, and how did the district court deal with the testimony of Officer Clark, who claims that he was seated next to Jones at the time? If I could answer the second question first, your honor, the district court didn't deal with the testimony of Officer Clark, and that's part of the problem in this case. Is that, and let me address the court's first question. The government's position is that the court did not make a credibility finding. It suggested bases for why the court, why a jury may find Jones's testimony to be credible. It certainly did that, and I'm going to explain in just a few moments, those, the reasons given by the court were clearly erroneous, but I say that because the court went to great lengths, your honor. If you look throughout its order, the court went to great lengths to say that it was not making a credibility finding. So despite the fact that it did suggest bases why Jones, why a jury may find Jones's testimony to be credible, it went to several pages of its opinion explaining why it cannot make a credibility finding. Why in this case, a jury, a jury is entitled to make that credibility finding. Now, your honor, the government's position is that under the law, a court is required to make an initial credibility finding to pass upon the believability of the witness's testimony. And then in light of that, consider whether that testimony would probably, probably result in an acquittal on a retrial. Well, isn't the issue of whether the judge did or didn't make a credibility finding, isn't that really a false, a false question? Because the issue is whether it would probably produce an acquittal. So doesn't the judge have to inject that testimony back into the trial and figure out whether it would probably produce an acquittal and on the way there, has to see how believable that story versus another story, the extent of the inconsistency, but it's not just a, if a court doesn't make a credibility finding as to one piece of evidence, then it's, it's reversible error, is it? Your honor, I'd agree with that, but the credibility argument, your honor, was really to highlight the, uh, what the district court did in this case, which was wrong. The district court simply held that if a jury were to credit the witness's testimony, Mr. Jones's testimony, there would likely be reasonable doubt. A court is not permitted to do that. As the, as the McCullough case in the 10th circuit held, a court has a gatekeeper function as you're, and you're right, Judge Rendell, along that way, along the way to making that decision, whether the, uh, evidence would probably result in an acquittal. The judge has to make an initial determination as to whether that evidence is, is worthy of, of belief. I mean, if it would, I'm sorry, your honor, I didn't mean to interrupt you. Well, um, you know, the witness is going to come in and said that the gun fell from the, from the sky. If a jury were to credit that testimony, there would be reasonable doubt, but that doesn't mean that a judge is simply permitted to punt that issue to the jury. A judge has, a district court judge has to make a, a, a finding as to whether that evidence is believable. And then you're right. You're right. You, the judge failed to do so in this case to look at all the other evidence that would be admitted at trial. And by the way, every single police officer who had testified will, has testified that that third party who mysteriously dropped that gun into Victor Jones's lap, it didn't, that person didn't exist. The officers had secured the front of the bar. There were the only people who were sitting at the bar were, were clearly identified and there was no third party. And your honor, the reason why the district court's failure to conduct, I'm calling it a credibility analysis. It really is just exercising its gatekeeper function to initially look at the evidence. You look at the facts of this case, your honor, the facts of this case are incredible. I'm sorry, your honor. Pardon me. Can I just interrupt for this question? Would the credibility of the witness be the deciding factor? Let's assume for the moment the judge finds him to be credible, but that he was available before the trial. The question of availability, Trump, the credibility of the witness as far as excluding the evidence is newly discovered. Your honor, under Ionelli, what the court has held is that if the defendant fails to meet four but miss one, that motion for new trial cannot be granted. It's a very strict standard, your honor. So if the defendant knew about the witness's testimony and failed to present that evidence at the first trial, then does he have to know about the testimony? Would it be enough if he's just, he knows that the witness is available and doesn't ask him? Yes, your honor. It would. Well, let me frame it this way. It would be enough if the defendant knew that that witness had potentially helpful testimony. And then it is incumbent upon the defendant to try to see whether that witness is available and whether that witness is willing to talk to him. The defendant is, as court after court has held, the defendant is required to take concrete steps to investigate that evidence and to obtain that evidence. And if he fails to do so, he does so at his own peril. Despite what the district judge said about not making a credibility finding, doesn't seem evident that that is what he really did. Your honor, that's certainly a fair reading of the, I mean, I can tell you, your honor, my time's running out. That's certainly a fair reading of the opinion. But your honor, if you look at the, I'm referring to page 830 of the record. If you look at the reasons given as to why the court found his testimony to be credible, I mean, they are simply erroneous. And is that what's our, we review under what standard? The clearly erroneous standard, your honor. And obviously it's not every day the government comes before this court asking this court to find the district court's findings to be clearly erroneous. But if you look at these reasons, your honor, they are clearly erroneous. The court concludes that it's not logical for Jones to perjure himself for the boyfriend, being Kelly, of one of his friends, meaning Jackie Seacrest, the defendant's longtime girlfriend. Not logical. The court ignored the fact that Jones is Kelly's friend and drinking partner. And I think this court can take judicial notice that friends sometimes lie on behalf of their friends to help exonerate them. That simply is clearly erroneous. I think we understand. Yes. I'm sorry, your honor. No. You're doing great. On our time. Thank you very much, Mr. Snow. We'll have you back on rebuttal. Thank you, your honor. Mr. Cedrone. Good morning. Good morning, your honor. The court will have to forgive me. I'm just getting over a cold, so if my voice goes in and out, we'll have to just deal with it. Good. That's why we have you way back there in America. I appreciate that. And I was actually about ready to get up and ask to reserve some time, and then I forgot that I wasn't at the table that I'm used to sitting at. Well, I see that the government, their clerks actually filed a red brief. Oh, yes. And we have a blue cover on it now. I'm glad they did that first, because I probably would have made that mistake along the way at some point. I'd actually like to start my argument where Mr. Tsao, my friend, left off, and dealing with this whole credibility issue that the district court decided or did not decide. The district court did make a credibility decision, and it did so consistent with its gatekeeper function. The district court obviously, in the context of a newly discovered evidence situation, has to decide whether there's some bound of credibility to the evidence. I mean, using Mr. Tsao's example, if the evidence is preposterously unreasonable or silly, the gun fell from the sky. I mean, obviously, in the context of a newly discovered evidence claim, the district court needs to say, well, a new trial is not warranted under that such and such a setting. In this instance here, we're not talking about that kind of evidence. What we're talking about here is evidence that is objectively reasonable, and the district court, in fact, did, although the district court went out of its way to say it wasn't making credibility finding, it, in fact, did, and it gave its reasons. It basically said that this is enough evidence, this evidence is credible enough that a jury could believe it, and when a jury believes it, it would probably result in an acquittal. But what about the fact that the court didn't consider at all the inconsistency of Jones' testimony, the fact that originally he had told the girlfriend, you know, it was mine, and then later on, it just fell in my lap? And the district court also didn't consider the bias of the witnesses, the fact that, you know, maybe this is a way for everybody to get home free, to get Kelly out of jail, and, you know, it fell in my lap. Jones is not at fault. Was the district court's credibility finding really complete? Yes, I believe it was, Your Honor, and the fact that the district court doesn't specifically say I've considered this fact and rejected or factored into the analysis, or I don't consider this fact and so forth and so on doesn't mean it didn't consider it. But Officer Clark's testimony was pretty key, was it not? Not really, Your Honor. Officer Clark's testimony is actually, in a very significant way, completely contradicts the other police officers' testimony, including the government's star witness, Officer Stewart. I understand that at one level, Officer Clark's testimony says something along the lines that there wasn't this person who may have thrown or did not throw the gun. And I actually want to address that at some point. But Officer Clark's testimony is entirely in conflict with Officer Stewart's testimony on a very key point about whether the gun made a noise. So I think implicit in the district court's findings, and as I look at this court, I see 26-plus years of experience on district courts, most of it with Judge Rodriguez, of course, and six, we'll attribute to Judge Rendell and Chief Judge Sirica. You're not making reference to my age, are you? I'm sorry, sir? No, I'm sorry. You're not making reference to my age. You know district courts don't always point out every single fact of what they consider. The court clearly can. This is a court that is, this district court is an experienced district court that's very familiar with the I&LE test. In fact, this is the very district court that this court affirmed in one of its leading cases on this subject, and that being the Janus case. So this is a well-reasoned opinion by a well-reasoned district court judge who considered everything. And yes, at one point he says, I have a little trouble about this testimony, but I'm not going to make the ultimate credibility finding. And I think he's not required, the district court is not required to make the ultimate credibility finding. Because interestingly, think of the position that this district court is in, if the district court says, I actually believe this fellow. And let's say there is a new trial, and the district court continues to believe it, but yet it's not the district court's job to make the initial fact finding. I'm with you on that. But didn't the district court virtually ignore the pretrial diligence on the part of the defendant? No. I do not believe he did. First of all, the district court, in its opinion, says that the government never contested pretrial diligence. And before the district court, if you look at the pleadings, there's some truth to that. It was always in the context of the post-trial diligence. The first time that we hear about pretrial diligence to the extent that we're hearing about it is on appeal. Now, interestingly, and this is why I don't think the district court really ignored the issue of pretrial diligence. And that is because the government relies heavily on the Samara case, which was actually decided after the district court entered its ruling in this case. But Samara is very important because it says the first step that we have to look at to The pretrial diligence is really, as I read it, and I must have read these cases 10 times just in the last couple of days again, trying to sort them out. But it seems to me that there's two prongs. There's a prong within the newly discovered evidence claim of whether the evidence is actually newly discovered and whether it constitutes pretrial diligence. In that context, Samara instructs that the first thing we really have to do is to look at the evidence, not the implications of the evidence and so forth. What is the new evidence at issue in this case? The new evidence at issue in this case isn't that somebody else threw the gun, because that was stated by Kelly that day to the arresting officers when they arrested him. The new evidence under an evidence standard is the admission by Jones that it was he who threw the gun. But isn't there another step there? Does someone have to look to see whether or not what you're claiming to be newly discovered was knowable prior to the trial? Yes. My initial answer to that question is yes. However, as the language of all these cases instructs, you have to look at these situations in the context of all the facts and circumstances. If you accept the government's reasoning, then every time that there is a possible exculpatory witness who may or may not be, who is not necessarily known to the defendant, the defendant is then required to go out and explore all of these potential opportunities. In a situation such as this, it is objectively, in my view, unreasonable to assume that somebody like Jones, assuming, first of all, there's nothing to suggest that Kelly knew it was Jones who threw the gun, and the bar, it seems to be the record is unclear as to how crowded the bar was. We know there were some people on one side of Kelly. We know there were some people on the other side of Kelly. We know the bar was crowded enough that when Officer Stewart felt that her colleague was in some sort of jeopardy down at the other end of the bar, she figured he couldn't handle it alone. She walked down and then came back. That's all part of the record. The only person who says that there wasn't a whole lot of people was Officer Clark, who I suggest the district court rejected his testimony without explicitly saying so. In Ionelli, the court makes it clear that putting yourself in a place of the defendant, defendant didn't know that there was a witness, and no way of knowing. Pretty much they rely on the knowledge that the defendant has. Here I know there's a distinction between what the lawyer does pretrial, what the defendant may have to do pretrial, and there may be a tension between the two. But they make it clear that the defendant did not know. Now, then you go back to the second step and explore the question of availability. Who would know that there's a potential witness that's available? Do you now look to see the knowledge that the defendant has with respect to potential exculpatory evidence? Well, I think you have to, Your Honor, but that begs the question of what constitutes an available witness. In Ionelli, we were dealing with people who, as I recall the facts of Ionelli, we were dealing with alibi-type witnesses, not people who would have to come into court and make an admission against their penal interest. At least that's how this was originally seen, and I think that's what actually caused the district court to have this model. But you don't know that. No one asked him to know what his testimony would be. And he's sitting right next to him at the bar with potential information. Do you now have to look at the availability concept that he's sitting there? If he were four stools away, maybe not. But sitting right next to you, a friend who doesn't come forward and incriminate himself with new evidence, but exculpates everyone that at least he could have been asked to the people to take the fifth and the grand jury testimony. Your Honor, I appreciate the fact that there was potentially an available source of information. However, what we're talking about here is for that source of information, for Kelly to assume that that source of information would have created available evidence.  I don't think that's the test. I mean, the prong that has to be fulfilled is that the district court has to make a finding of diligence. That's what has to be done. And to the extent that puts a burden on the defendant, so be it. My question to you is, what is there here that would have supported a finding of diligence on the part of the defendant? I mean, maybe you could say, you know, of course, Jones's head was reeling. You know, maybe you say, well, then the next day he asked and Jones was hungover and maybe he asked him a question and maybe you say, well, Jones didn't remember, but at least he asked. What do we have here that would support the finding of diligence by the district court? Your Honor, we have nothing except that implies that in the setting of these unique facts and circumstances of the case, such a question is required and I don't believe it is. What's required here is for the defendant to explore reasonable possibilities. Well, how is this not a reasonable possibility? Standing right, I mean, they're sitting right around the bend from each other in the bar that, you know, this happens and he stands up and is arrested and taken away and nobody asks. If his assertion is it wasn't mine, I don't know where it came from, then the diligence would have to be that somebody tries to say, you know, what did you see? Where did it come from? I mean, there just doesn't seem to be any level of diligence that occurred here and it's not a situation where he had no reason to know that this person existed or, you know, it was a witness who vanished. It's just a very difficult fact pattern, I think, to find diligence. I'm open to your thoughts. Well, Your Honor, I would agree that if the court is to focus, if the court is looking at this particular piece of evidence and now it says that the defendant has to prove why he did not discover this particular piece of evidence, again, you need to look at the entire facts and circumstances of the case. The government keeps referring to Mr. Jones as to Kelly's drinking buddy and longtime friend. That's an overstatement of the record. Jones himself says that they were general acquaintances, that he was friends with the defendant. The other point is, one of the things that I think is imperative for the court to keep in mind here, that what we're talking about here is in the interest of justice standard and whether keeping the status quo, that is, or reinstating the verdict would result in a manifest injustice. What you have here is you have an individual who steps forward afterwards under very credible circumstances, circumstances which I think the district court found, and admits to being the person responsible for this crime. Well, not quite. He said it wasn't his. Somebody passed it on to him. Frankly, I sort of liked the issue better when I thought he was going to take the Fifth Amendment. I liked it better as an admission against a case of interest. Let me ask you this. Does Iannelli and the cases after Iannelli, do they require that the due diligence or the diligence inquiry include pre-trial as well as post-trial? Do you think the government is overstating? I think the government is overstating. Plus, I think the court needs to look at the overall standard that's set forth in the rule, and that is the interest of justice standard, and then even look at what this court said in Barbosa. Barbosa actually seems to suggest that what you do is you look at the amount of trial evidence in a case, and then the burden seems to weigh. In fact, I think what the court said in Barbosa is that, if the court will just indulge me for a second. I'm sorry. Well, it says that in the light of overwhelming evidence of guilt, the defendant is required to prove A, B, C, D, and that would be the five steps. I think when in looking at the overall interest of justice standard, and you have to look at the evidence in this case, I mean, this is not a situation where this particular newly discovered evidence is completely contrary with the trial evidence in the case. The evidence in the case is that Officer Stewart seized a gun falling from a lap. It's entirely consistent with... Just one comment. You made a comment about maybe their relationship wasn't that close, but doesn't the record show that they spoke at least 20 times between the arrest and trial? No. I completely disagree with that proposition. In fact, Jones says, specifically says, that they only spoke, I think it's one to three times. What the government cites is the 20 times. At CFIS. He cites CFIS, but if you look at that very carefully, what it seems to me what CFIS is talking about is that she and Camina Gantt saw Jones 20, 30 times since then. In fact, she even says that they didn't have, they, meaning Jones and Kelly, did not have that kind of relationship. And as I said, if you were to look at this sort of as like concentric circles, I think you'd see that Kelly sort of overlaps with the circle of Jones and, I'm sorry, Jones Gantt and CFIS, but not to the extent that that reference suggests. Good. Okay. Mr. Cedrone, thank you very much. Thank you. Mr. Salmon. Thank you, Your Honor. I just want to... Thank you, Your Honor. I just want to address a few points to make sure that the record is clear. First of all, I'm not sure how Mr. Cedrone can say that the government didn't contest pretrial diligence before the district court. That's precisely, that was precisely the main issue before the court, and I direct the court's attention to 824, which is the court's opinion, where the court specifically notes that the government argued that Kelly failed to exercise pretrial diligence and that the government contends that the defendant's indifference to investigating what Jones may have seen or known is fatal to his pursuit of a new trial. This was raised before the district court. I bring that up only because I think Mr. Cedrone's argument suggests some sort of a waiver. This issue was properly before this court. Judge Rodriguez, if I could address one question you asked to Mr. Cedrone, which is... And one question you asked to me, which is what is the appropriate roles of counsel and defense... Counsel and the defendant in investigation? Well, Your Honor, if you look at this case, the defendant knew the importance of pretrial investigation by himself because he argued ineffective assistance of counsel to the defendant because he claimed that he brought three witnesses to the attention of defense counsel, and the defense counsel was ineffective for failing to call those witnesses. By the way, none of those three witnesses was Victor Jones, tellingly. Mr. Cedrone also brought up the interest of justice possibility of affirming the district court's decision. That's not before this court. The district court specifically considered that a miscarriage of justice would result  This is the government's appeal. The government is not appealing the district court's denial of the new trial motion on that basis. That is not a separate ground for affirmance for this court. And finally, Your Honor, again, just to be clear, the diligence prongs and the likelihood of acquittal prongs are separate issues. The government need only prevail on one of those issues for this court to reverse the district court's decision. That's exactly what the government's asking the court to do, reverse the district court's decision with instructions to reinstate the verdict and proceed to sentencing. Unless there are further questions. Any other questions? We thank both counsel for an excellent argument. We'll take the matter under revisal. And I just want to say the briefing in the case was exceptional. Go ahead. The government's counsel and Mr. Cedrone. Thank you, Your Honor. Exceptionally good, that is.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.